NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEUROSURGICAL ASSOCIATES OF NJ, P.C. on assignments of Lenny G. and Amelia S., | |
| *Plaintiff*, | Civil No.: 2:17-cv-13210 (KSH) (CLW) |
| v. | |
| AETNA, INC., | **OPINION** |
| *Defendant.* | |

**Katharine S. Hayden, U.S.D.J.**

Before the Court is defendant Aetna's motion to dismiss (D.E. 10) the two-count amended complaint (D.E. 9, Am. Compl.) filed by plaintiff Neurosurgical Associates of NJ, P.C ("Neurosurgical"), a medical provider. Neurosurgical brings this action for unpaid insurance benefits and breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. Central to Aetna's motion is its challenge that Neurosurgical lacks standing, citing anti-assignment clauses in the patients' health benefit plans.

Per Neurosurgical's request, the Court stayed its decision on the motion until the Third Circuit decided *American Orthopedic & Sports Medicine v. Independent Blue Cross Blue Shield*, which is now reported at 890 F.3d 445 (3d Cir. 2018).

For the reasons that follow, the Court finds that Aetna's anti-assignment clauses validly bar beneficiaries from assigning benefits, and grants Aetna's motion to dismiss.

## I. Background

Neurosurgical's claims relate to medical treatment provided to two patients, Lenny G. and Amelia S., and its amended complaint alleges the following. In December 2016, Neurosurgical performed a stereotactic craniotomy and excision of meningioma on Lenny G. (Am. Compl. ¶¶ 4-5.) Lenny G. "transferred all of his rights to benefit payments under his insurance plan" and his related rights under ERISA to Neurosurgical, which in turn filed a health insurance claim for reimbursement totaling $99,834.00. (*Id.* ¶¶ 6-7.) Aetna approved $24,848.20 for the medical services, an amount that included the Lenny G.'s coinsurance portion. (*Id.* ¶ 8.)

Amelia S. underwent stereotactic radiosurgical treatment for three brain tumors in July, 2012. (*Id.* ¶¶ 9-10.) Amelia S. transferred all of her benefit payment and ERISA rights to Neurosurgical, which then filed a health insurance claim for $48,686.00. (*Id.* ¶¶ 11-12.) Aetna approved a $2,619.00 claim payment. (*Id.* ¶ 13.)

Neurosurgical alleges that it appealed both claims and exhausted Aetna's administrative appeals process for each. (*Id.* ¶ 14.) Neurosurgical calculates that Aetna's underpayment for the two claims totals $121,052.80. (*Id.* ¶ 17.)

On March 6, 2018, Aetna filed this lawsuit seeking payment of the outstanding balance and "all benefits" to which it would be entitled under Aetna's insurance plan, compensatory damages and interest, and attorneys' fees and costs. Count One asserts that Aetna failed to make the payments required under the patients' respective plans, in violation of ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1)(B). Count Two asserts a claim for breach of fiduciary and co-fiduciary duty, in violation of 29 U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a).

Aetna moved to dismiss both counts on the ground that Neurosurgical lacks standing, and in the alternative, to dismiss Count Two as duplicative of Count One's claim for benefits. (D.E.

10.) Aetna submitted a brief in support of the motion (D.E. 10-1, Def. Br.), and attached a copy of the members' specific health plans. Neurosurgical opposed, arguing that the anti-assignment clauses "do not limit the patients' power to assign but rather only their right to assign" and further, are contrary to public policy. (D.E. 16, Opp. Br. 1.)

## II. Legal Standard

Aetna's motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Aetna's arguments in support of dismissal for lack of standing are governed by this standard because whether Neurosurgical has derivative status under ERISA is a statutory matter. *North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) ("Whether [plaintiff] has gained derivative status involves a merits-based determination . . . . Therefore, the motion to dismiss was properly filed under Rule 12(b)(6)."). *See also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").

While a district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings," it may properly consider "documents that form the basis of a claim," defined as documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

**III.    Discussion**

Aetna asserts that Neurosurgical is neither a participant nor a beneficiary, and the health plans for the patients in this case "expressly prohibit[] assignments of benefits."  (Def. Br. 5.) Neurosurgical responds that the patients validly assigned their benefits to Neurosurgical, and that Aetna's anti-assignment provisions lack the "requisite language . . . to render an assignment void, invalid or ineffective." (Opp. Br. 2.)  Neurosurgical adds that the anti-assignment clauses at issue should not be enforced "as a matter of policy, fairness, and common sense."

**A.  Standing under ERISA**

Section 502(a) of ERISA entitles "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). [1]

Healthcare providers do not qualify as "participants" or "beneficiaries" under ERISA, *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).  But healthcare providers may acquire derivative standing where the plan participant or beneficiary assigns rights to the provider. *North Jersey Brain & Spine Ctr.*, 801 F.3d at 372.

The Third Circuit recently joined an "overwhelming consensus among the Courts of Appeals" when it ruled that "anti-assignment clauses in ERISA-governed health insurance plans

---

[1] Under a claim for breach of fiduciary duty, ERISA additionally allows a fiduciary to bring action; however, because Neurosurgical is not a fiduciary and only asserts standing under an assignment theory, the Court analyzes the standing challenge for both counts under that that theory.

as a general matter are enforceable." *American Orthopedic*, 890 F.3d at 453 ("In thoughtful and

reasoned decisions, every Circuit to have considered [this question has] conclud[ed] that nothing

in ERISA forecloses plan administrators from freely negotiating anti-assignment clauses.").

There, the operative anti-assignment clause contained the following language: "The right of a

Member to receive benefit payments under this Program is personal to the Member and *is not*

*assignable* in whole or in part to any person, Hospital, or other entity." *Id.* at 448 (emphasis in

original). Invoking the "black-letter law that the terms of an unambiguous private contract must

be enforced," *id.* (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009)), the Third

Circuit held that the anti-assignment provision was valid.

This Court notes that the *American Orthopedic* decision is consistent with a long line of

decisions from this district that have denied standing after finding a valid anti-assignment clause

in an ERISA-governed health insurance plan. *See Neurological Surgery Assocs. P.A. v. Aetna Life*

*Ins. Co.,* No. 12-5600, 2014 WL 2510555 (D.N.J. June 4, 2014) (Chesler, J.)*; Specialty Surgery*

*of Middletown v. Aetna*, No. 12-4429, 2014 WL 2861311 (D.N.J. June 24, 2014) (Linares, J.);

*Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, No. 14-4486, 2015 WL

4025399 (D.N.J. June 30, 2015) (Shipp, J.); *Arash Emami, MD, PC v. Quinteles IMS*, No. 17-

3069, 2017 WL 4220329 (D.N.J. Sept. 21, 2017) (Linares, J.); *Univ. Spine Ctr. v. Aetna, Inc.*,

No. 17-13654, 2018 WL 1757027 (D.N.J. Apr. 12, 2018) (Linares, J.).

Here, Lenny G.'s plan provides:

**Assignments**
Coverage of your rights under this plan may not be assigned. A direction to pay a
provider is not an assignment of any right under this plan or of any legal or equitable
right to institute any court proceeding.

(Def. Br. 6; D.E. 10-5, Ex. 1 at 80.)

Amelia S.'s plan states:

> **Assignment of Benefits.** All rights of the **Member** to receive benefits hereunder are personal to the **Member** and may not be assigned.

(Def. Br. 6; D.E. 10-5, Ex. 2 at 52.)

Neurosurgical claims that these anti-assignment clauses lack the "requisite language that an anti-assignment provision must contain to render an assignment void, invalid or ineffective," citing a 20-year old Third Circuit, non-ERISA case that applied New Jersey law. (Opp. Br. 2-4 (citing *Bel-Ray Co. v. Chemrite (PTY) Ltd.*, 181 F.3d 435 (3d Cir. 1999).) Neurosurgical asserts that in *Bel-Ray*, the Third Circuit drew a distinction between contractual provisions that limit a party's *right* to assign the contract, and those that limit a party's *power* to assign the contract, and held that to effectively limit a party's power to assign, "the assignment provision must generally state that nonconforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." 181 F.3d at 442.

Obviously this argument failed to persuade judges in this district even before the Third Circuit made the definitive ruling in *American Orthopedic*. Neither that case nor the many decisions cited above have required the anti-assignment clauses they upheld to contain magic words like "void" or "invalid." In fact, these specific words are noticeably absent from many provisions held to be valid. *See Univ. Spine Ctr.,* 2018 WL 1757027, at \*2 ("Coverage and [Patient's] rights under this plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding."); *Specialty Surgery of Middletown*, 2014 WL 2861311, at \*4 ("Coverage may be assigned only with the written consent of Aetna. To the extent allowed by law, Aetna will not accept an assignment to an out-of-network provider."); *Arash Emani*, 2017 WL 4220329, at \*2

("The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan."). And of binding significance on this point, the anti-assignment clause that the Third Circuit upheld in *American Orthopedic* did not contain either of the words "void" or "invalid." The nub is whether the language under review here is unambiguous in its prohibition against assignment of benefits to Neurosurgical. And the Court agrees with Aetna that "[t]he language in each of these anti-assignment clauses clearly and unequivocally preclude[s] the patient from assigning benefits to Neurosurgical." (Def. Br. 6.) Accordingly, Neurosurgical does not have a valid assignment, and as a matter of law, does not have standing to assert an ERISA claim.[2]

## IV.    Conclusion

For the reasons stated above, the Court GRANTS Aetna's motion to dismiss. An appropriate order will follow.


|                                | /s/ Katharine S. Hayden            |
|--------------------------------|------------------------------------|
| Date: February 22, 2019        | Katharine S. Hayden, U.S.D.J.      |

---

[2] Neurosurgical argues that the anti-assignment clauses should not be enforced against it "[a]s a matter of policy, fairness, and common sense" because ERISA aims to "protect . . . the interests of participants in employee benefit plans" and these interests are "not served by depriving health care providers of standing to sue insurers to recover . . . for the healthcare services they provided to participants in those plans." (Opp. Br. 5.) While Aetna did not respond directly, as no reply brief was filed, its moving brief cites *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, where the court confronted a similar policy challenge, and reasoned: "The Anti-Assignment clause, whatever its policy merits, is a bargained-for part of the Plan. New Jersey, for its part, has declined to invalidate anti-assignment clauses as a policy matter." 262 F. Supp. 3d 105, 111 (D.N.J. 2017) (McNulty, J.); Def. Br. 7. In addition, where the Third Circuit has reasoned in *American Orthopedic* that anti-assignment clauses are "as a general matter . . . enforceable," it is difficult for this Court to conclude that they are classifiable as against public policy, fairness, and common sense. 890 F.3d at 453.